'Oaruthers, J.,
delivered the opinion of the Court.
This is an appeal by the State from a judgment of the Law Court of Chattanooga, against her for $2,588, in an action of *114 assumpsit. The case was submitted to the Court on this agreed state of facts:
“ Thomas Crutchfield, deceased, did, in his lifetime, to wit, on the fifth, sixth, and twelfth days of November, 1838, enter in the entry-taker’s office of the Ocoee district, Tennessee, lots' one, two, three, and four, in island number one, in Tennessee river, known as ‘Jolly’s Island,’ situate in Meigs county. Upon said days said Crutchfield paid to the entry-taker the sum of $4725.50, for the lands in said lots, there being six hundred and thirty acres of said land, which was entered and paid for by said Crutchfield, at the rate of $7.50 per acre. On the 30th of January, 1839, a grant was issued by the State to Crutchfield. Said lands were in the possession of Martin Hammock, Abner ILanner, John W. Rhodes-, and Jas. H. Rhodes, who claimed the lands under a superior title. Crutchfield brought an action of ejectment against them in the Circuit Court of Meigs county, which was determined in favor of the defendants. Crutchfield carried the case by appeal to the Supreme Court, and there the judgment was affirmed on the 23d of July, 1843. Crutchfield’s title from the State was held invalid, and judgment for the cost, amounting to $124.43, was rendered against him. On the 3d of April,. 1844, the State, by act of Assembly, refunded to Crutchfield the sum paid by him in 1838 to the entry-taker, to wit, the sum of $4725.50.”
The Court gave judgment against the State for $2583.89,. which was made up by the interest on the said sum of $4725. 50, from the time it was paid to the entry-taker, (November, 1838,) and the cost paid by Crutchfield in his unsuccessful suit for the land.
The State could not be sued until the act of 1855, carried into the Code, section 2807. That provides that “ actions may be instituted against the State under the same rules and regulations that govern actions between private persons.” Before this act, demands against the State could only be asserted by appeal to the Legislature. But now the State may be made liable in- the courts like “ private persons.” So, the parties' *115 are properly before tbe Court, and tbe case is to be decided by the laws governing tbe rights of individuals. Tbe act takes from both parties tbe right to plead tbe statute of limitations. Code, § 2762.
The Legislature, in 1844, (cb. 98, § 2,) passed an act making provision for this and other such cases. It provides that in cases of entries of land in tbe Ocoee district, “ tbe title to which has been controverted, and tbe question judicially determined that the entry of tbe land in tbe Ocoee district, and tbe grant thereon obtained, is void, tbe money so paid into tbe entry-takers’s office aforesaid shall be refunded to said enterer or enterers in tbe manner hereinafter ¡pr escribed.” This act was passed on tbe 15th of January, 1844, and on tbe 3d of April following, Crutchfield brought himself within its provisions, and received from the State the sum he had paid in November, 1838. This suit, to recover the interest on that sum and the cost expended by him, was instituted on the 29th of July, 1856.
We think his Honor erred in holding that the State was liable upon this state of facts. The State does not warrant the title to the land which she grants. She opens her offices, and permits individuals to enter, at their own risk, any lands they choose, and she issues her grants. They must beware of the titles they get. A private person is not bound for title without warranty, much less the public or State. But under a high sense of equity and justice in the particular case described in the act of 1844, where individuals had paid the money in good faith, and had lost their lands because of their entry in the wrong office under the decision of the Courts, the Legislature made provision, by the act” referred to, for refunding the amount actually paid into the treasury. They were not bound to do this much. It would be very singular if the voluntary payment of the principal would impose an obligation to pay the interest also. It would have been a plausible argument to the Legislature that, as they recognized the right of the enterer to be refunded the amount actually paid, they ought also to pay the interest as an incident. But the asser *116 tion of a legal claim to it is a very different thing. The sense of justice of the Legislature might still be appealed to for the interest, but not the Courts.
But, in addition to this view, and upon the assumption that there was a legal obligation upon the State to pay the amount improperly received with accruing interest, the plea of accord and satisfaction in this case would, probably, be a good defence. The Legislature, in 1844, proposed terms of adjustment; that is, to refund the money paid, and Crutchfield accepted it. Must not that be regarded as a final settlement of the claim ? We think so. The question before a Court is not what is morally, but what is legally right.
Entertaining these views of the law, we are constrained to reverse the judgment of the Circuit Court, and give judgment in favor of the State upon the agreed case.